730 So.2d 400 (1999)
Roland A. CALDERON, Jr., Appellant,
v.
Elizabeth J. CALDERON, Appellee.
No. 98-396.
District Court of Appeal of Florida, Fifth District.
April 9, 1999.
*401 Howard D. Friedman of Richard A. Heller, P.A., Orlando, for Appellant.
David L. Robold of Roberts & Robold, P.A., Orlando, for Appellee.
GOSHORN, J.
Roland Calderon appeals the final judgment dissolving his marriage to appellee Elizabeth Calderon. Because we agree with Roland that the trial court erred in its award of child support, alimony, equitable distribution, and attorney's fees, we reverse and remand for further proceedings.
The parties were married for approximately eleven years, during which Roland worked as a plumber and Elizabeth as a housewife. Three children were born of the marriage, and between the time that Elizabeth filed her dissolution petition and the date of the final hearing, another child became expected.
After a hearing in October 1997, the court entered the subject dissolution order, which awards Elizabeth the marital home and one of the parties' vehicles and awards Roland the other vehicle and orders him to pay most of the parties' debts, including the $551 monthly mortgage payment on the marital home. The order also requires Roland to pay $150 per month in permanent periodic alimony, $150 per month in rehabilitative alimony during Elizabeth's pregnancy, $4492.50 for Elizabeth's attorney's fees "as additional rehabilitative alimony" within six months of the order, and $1848 per month in child support, as well as requiring him to provide medical and dental insurance for Elizabeth and the children.
The final hearing was not reported, and Elizabeth's sole response to the issues raised on appeal is that Roland has not presented an adequate record to permit review. However, because the errors alleged by Roland are apparent from the face of the final judgment, they are reviewable notwithstanding the lack of a transcript or a stipulated statement. See Sugrim v. Sugrim, 649 So.2d 936 (Fla. 5th DCA 1995).
*402 The record reveals that the court adopted the child support guidelines worksheet which was presented at the hearing. That worksheet lists Roland's gross income as $3446 per month and his net income as $2760 per month, while Roland's financial affidavit lists gross income of only $2408 and net income of only $1978. Even under the higher amounts adopted by the court, Roland has been ordered to pay far too much of his income as support. The permanent periodic alimony ($150), child support ($1848), and mortgage payment ($551) alone total $2549, leaving Roland $211 per month on which to live. However, in addition to the $2549, Roland was also ordered to pay $150 in rehabilitative alimony and an average of $748.75 per month in attorney's fees during the first six months after the dissolution order. It was error for the court to award such a large percentage of Roland's income. See, e.g., Gentile v. Gentile, 565 So.2d 820, 822 (Fla. 4th DCA 1990) (finding abuse of discretion in award of 79% of husband's income for support, noting that "where the husband's income is nearly exhausted on obligations imposed by the final judgment, leaving him with practically no money to support himself, reasonable persons could not differ as to the im propriety of the actions taken by the trial court") (emphasis in original); Sokol v. Sokol, 441 So.2d 682 (Fla. 2d DCA 1983) (error to award all but $328 of husband's imputed take-home pay of $1500 for child support and alimony); Kaylor v. Kaylor, 413 So.2d 870, 871 (Fla. 2d DCA 1982) (reversing where court awarded more than $1400 of $2000 net income as support, noting that judgment "erroneously took appellant from a position of financial well-being to financial misfortune").
In addition to the error in awarding such a large proportion of Roland's income as support, there are numerous errors in the calculation of the individual amounts awarded. First, as to the child support award, Roland is correct that the alimony that Elizabeth will receive from him should have been computed as income to her in the child support computation; additionally, that amount should be deducted from Roland's gross income in determining the child support amount. See § 61.30(2)(a)9., Fla. Stat. (1997) ("Gross income shall include ... [s]pousal support received from a previous marriage or court ordered in the marriage before the court."); § 61.30(3)(g) ("Allowable deductions from gross income shall include ... [s]pousal support paid pursuant to a court order from a previous marriage or the marriage before the court.").
Secondly, the court erroneously ordered Roland to provide health insurance for Elizabeth and the children when there is no finding that such insurance was reasonably available. Paragraph 61.13(1)(b) provides in part that "[e]ach order for child support shall contain a provision for health insurance for the minor child when the insurance is reasonably available" (emphasis added). The court must make a specific finding that the insurance was reasonably available before ordering Roland to provide insurance coverage. See Gibson v. Gibson, 596 So.2d 1223, 1224 (Fla. 2d DCA 1992) ("The trial court omitted a finding that medical and dental health insurance for the child is reasonably available to him either through group insurance at a reasonable rate ... or otherwise, taking into consideration his ability to pay.").
Thirdly, Roland is correct that there are no findings in the dissolution order to support the alimony awards, and there is no support of any kind for the "rehabilitative" alimony awarded for attorney's fees and during Elizabeth's pregnancy. As this court has previously noted:
[T]he purpose of rehabilitative alimony is to allow a spouse to obtain a skill, education or rehabilitation in order to adjust to a new life. Rehabilitative alimony is for a time certain or until a specific goal has been met. Further, courts have held that a viable rehabilitative plan must be presented at the time the request for rehabilitative plan is made. Since rehabilitative alimony is a projection based upon assumptions and probabilities, the plan must be in writing in the event the plan or goal is not achieved.
Brock v. Brock, 682 So.2d 682, 683 (Fla. 5th DCA 1996) (citations omitted). Here, there was no rehabilitative plan presented, and on its face the judgment improperly awards rehabilitative alimony for non-rehabilitative *403 purposes. Additionally, Roland is correct that the order should provide that the award of permanent periodic alimony terminates upon Elizabeth's remarriage or the death of either party. See Schellhammer v. Schellhammer, 687 So.2d 987, 988 (Fla. 5th DCA 1997) ("[T]he final judgment does not provide that the award of permanent alimony must terminate upon the death of either of the parties or upon the remarriage of the wife. We modify the final judgment to include this limiting language.").
Fourth, the final judgment fails to contain specific findings or valuations regarding the marital assets and liabilities as required by subsection 61.075(3), Florida Statutes (1997).[1] The award of assets does not appear to be necessarily unjust; there were only three assets, and one vehicle was given to each party and the home was given to the wife. However, because of the lack of the required findings it is not possible to determine the value of each party's award of property. See, e.g., Pearce v. Pearce, 626 So.2d 294, 294 (Fla. 5th DCA 1993) ("The decree does not comply with the findings and valuation requirements of section 61.075(3) in several particulars. Thus, we must remand this cause to the trial judge for additional findings, prior to our undertaking to review the judgment for errors in the trial court's equitable distribution of the parties' marital assets and liabilities.").
Finally, Roland is correct that the award of attorney's fees was improper. No attorney was called to testify at the hearing, and the affidavit of fees and costs was not signed until December 16, 1997 and was not filed until December 31, 1997the date of the order. The affidavit merely summarizes time and rate, without specificity; moreover, it does not appear that Roland was given an opportunity to contest the hours and rate. See Warner v. Warner, 692 So.2d 266, 268 (Fla. 5th DCA 1997) ("The court made no findings as to the number of hours reasonably expended or an hourly rate. The court's failure to make those findings was error."); Broyles v. Broyles, 573 So.2d 357, 361 (Fla. 5th DCA 1990) ("This affidavit was not served upon appellant prior to entry of the ... orders, nor was he afforded any opportunity to review or examine the amounts.... [T]he court must ... give notice to the party against whom award will be made, and afford an opportunity to review and rebut the reasonableness of any amount claimed. An opportunity to adduce testimony and rebut must be afforded before entry.") (citations omitted).
Because of the numerous errors apparent from the face of the judgment of dissolution, the awards of child support, alimony, and attorney's fees are reversed and remanded for a determination of support amounts which Roland can afford to pay and which are supported by record evidence. On remand, the court must make specific findings supporting each award and the distribution scheme.
REVERSED and REMANDED for further proceedings.
COBB and THOMPSON, JJ., concur.
NOTES
[1] This subsection provides in part:

The distribution of all marital assets and marital liabilities, whether equal or unequal, shall include specific written findings of fact as to the following:
(a) Clear identification of nonmarital assets and ownership interests;
(b) Identification of marital assets, including the individual valuation of significant assets, and designation of which spouse shall be entitled to each asset;
(c) Identification of the marital liabilities and designation of which spouse shall be responsible for each liability;
(d) Any other findings necessary to advise the parties or the reviewing court of the trial court's rationale for the distribution of marital assets and allocation of liabilities.