DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DOMINIQUE WILLIAMS,**
Appellant,

v.

**GLORIA GONZALEZ,**
Appellee.

No. 4D19-3659

[April 22, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Dale C. Cohen, Judge; L.T. Case No. FMCE-17-010579.

Elaine L. Thompson, Brandon, for appellant.

Tal Shemtov of The Tal Shemtov Law Firm, P.A., Plantation, for appellee.

FORST, J.

Appellant Dominique Williams ("the Father") appeals from the trial court's final judgment establishing paternity. Specifically, the Father challenges the trial court's award of sole parental responsibility to Gloria Gonzalez ("the Mother"), the reduction of the Father's time-sharing, and other restrictions on the Father's visitation. On these issues, we summarily affirm. The Father also argues that the trial court selected an erroneous effective date for the retroactive child support payment and erred in its calculation of his prospective child support payment. We agree with the Father with respect to these claims and, thus, reverse in part.

**Background**

The Mother and Father originally met in Florida but later moved to Virginia where the child was born. The couple's relationship deteriorated, and a few weeks after the birth of their child, the Mother left the Father and took the child to Florida to live with her parents. The Mother and child remained in Florida for approximately three months before the couple attempted a reconciliation in Virginia. The reconciliation failed and the Mother and child returned to Florida a second time.

Per the Father's testimony, he eventually moved to Doral, Florida, forty-five minutes from his child, and worked as a warehouse worker earning a gross income of $1,600 per month. He lived in Florida for several months before moving to North Carolina, where he currently resides and has a familial support system. In North Carolina, the Father works 20-25 hours per week for his family's business earning $760 per month. These modest hours allow the Father to take online classes towards obtaining a real estate license. The Father's family helps support him, and his new girlfriend pays for their rent and utilities. The Father's parents also gifted him a car worth approximately $21,000. At the time of trial, the Father had made child support payments totaling $1,600.

During this time, the Mother worked two jobs to support herself and the child. The Mother at the time of trial was working as a paralegal and earning approximately $60,000 per year.

Following a trial focusing on child custody and support, the trial court determined that the Father was underemployed and imputed monthly income of $1,600 to him. The court relied upon the $1,600 per month that the Father was making while working in Florida in 2018, rather than the $760 he was currently earning each month in North Carolina. The trial court further ordered retroactive child support to be paid to the Mother, imputing the income in the same manner as done for the prospective child support payments and determining that the payments were to be retroactive to April 2016, the date of the child's birth.

In addition to challenging the trial court's custody award, the Father appeals the imputation of income calculations and the durational scope of the retroactive support payments. As noted above, we summarily affirm the order with respect to the child custody determinations. Our sole focus is the trial court's rulings on the child support issues.

**Analysis**

*A. Prospective Child Support*

"The standard of review for a child support award is abuse of discretion." *Henry v. Henry*, 191 So. 3d 995, 997 (Fla. 4th DCA 2016) (quoting *McKenna v. McKenna*, 31 So. 3d 890, 891 (Fla. 4th DCA 2010)).

The Father argues that the trial court abused its discretion by imputing income to him based on his prior Florida wages because, at the time of trial, he was living and working in North Carolina, making less wages. The

Father also argues that the trial court abused its discretion by failing to deduct applicable taxes from his imputed income and by allocating the full costs of transportation and supervision to the Father. The court's finding that the Father was willfully underemployed has not been appealed.

"Where a finding of voluntary unemployment or underemployment is made, section 61.30(2)(b) states that the trial court is to determine the parent's employment potential and probable earnings 'based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community.'" *Broga v. Broga*, 166 So. 3d 183, 186 (Fla. 1st DCA 2015) (quoting § 61.30(2)(b), Fla. Stat.). The relevant inquiry focuses on the community in which the Father lives and works. *See Rabbath v. Farid*, 4 So. 3d 778, 782 (Fla. 1st DCA 2009) (reversing imputation of income based on past, foreign job because "[n]o evidence was presented regarding the current, prevailing earnings level and the potential source(s) or amount of income in the pertinent community for purposes of imputing income to Appellant."). The trial court may only impute a level of income supported by the evidence of employment potential and probable earnings and this determination must be based on competent substantial evidence. *Alich v. Clapp*, 926 So. 2d 467, 468 (Fla. 4th DCA 2006).

Here, the Father testified that, at the time of trial, he was earning $760 per month by working 20-25 hours for his family business. The Father's 2018 financial affidavit indicated that he had a gross income of $1,600 a month working full-time in Florida at a rate of $10 per hour. The trial court, upon finding that the Father was voluntarily underemployed, imputed income of $1,600 per month based on this affidavit. This was error as the relevant job market was Charlotte, North Carolina, and no evidence was presented at trial establishing the Father's earning potential in Charlotte. On remand, the trial court is to hold an evidentiary hearing to determine the Father's earning potential in Charlotte, as opposed to imputing income based on the Father's prior wages in Florida.

The trial court also erred by using the Father's gross income instead of his net income. *See* § 61.30(9), Fla. Stat. (2019) ("Each parent's percentage share of the child support need shall be determined by dividing each parent's net monthly income by the combined net monthly income."); *see also Ondrejack v. Ondrejack*, 839 So. 2d 867, 871 (Fla. 4th DCA 2003) ("Section 61.30(9), Florida Statutes, provides the statutory formula which *must* be used to determine each parent's actual dollar share."). This, too, must be corrected on remand.

Lastly, the trial court erred by requiring the Father to pay the entirety of the transportation and supervision costs associated with his visitation. "The expense of transporting the minor child for visitation is a childrearing expense like any other, which should be shared by the parents in accordance with their financial means." *Aranda v. Padilla*, 216 So. 3d 652, 654 (Fla. 4th DCA 2017). "[T]he proper test is the consideration of the parties' financial circumstances." *Id.* (internal quotations omitted); *see also McKenna v. Fisher*, 778 So. 2d 498, 499 (Fla. 5th DCA 2001) (reversing trial court's decision assigning the father responsibility for all travel costs because he was the party who relocated). Likewise, the costs of the supervised visitation should not have been allocated solely to the Father. *See Perez v. Fay*, 160 So. 3d 459, 466 (Fla. 2d DCA 2015) ("the expenses of visitation are part of the parties' childrearing expenses that must be addressed as part of the parties' child support obligations"); *see also Drakulich v. Drakulich*, 705 So. 2d 665, 667 (Fla. 3d DCA 1998) (the expenses of visitation are a childrearing expense like any other).

On remand, the trial court must determine the proper amount of income to impute to the Father based on his earning potential in Charlotte, North Carolina to calculate the prospective child support payments. The Mother's contention that the Father is "hiding money" by receiving a car worth $21,000 can be more properly addressed at this evidentiary hearing.

*B. Retroactive Child Support*

"Awards of retroactive child support are reviewed for an abuse of discretion." *Henry*, 191 So. 3d at 998 (citing *Wright v. Wright*, 411 So. 2d 1334, 1336 (Fla. 4th DCA 1982)).

The Father argues that the trial court abused its discretion by having the retroactive child support begin in April 2016 instead of November 2016. The Father further contends that the trial court erred by imputing to him an arbitrary income for the retroactive period. The Mother has also requested that the trial court revisit the income attributed to her in these calculations should this court remand the case for an evidentiary hearing. Additionally, both parties maintain that the trial court chose an arbitrary income to impute to each of them in the retroactive support calculation.

"[T]he court has discretion to award child support retroactive to the date when the parents did not reside together in the same household with the child, not to exceed a period of 24 months preceding the filing of the petition. . . ." § 61.30(17), Fla. Stat. (2019). Further, a court may award retroactive child support where the child has needs and the parent has the corresponding ability to pay. *Smith v. Smith*, 872 So. 2d 397, 399 (Fla. 1st

4

DCA 2004) (citing *Bardin v. State*, 720 So. 2d 609, 611-12 (Fla. 1st DCA 1998)). The obligor parent is entitled to credit for any payments that would qualify under section 61.30(17)(b), Florida Statutes (2019), that occurred during the retroactive support period. *Lennon v. Lennon*, 264 So. 3d 1084, 1087 (Fla. 2d DCA 2019).

The Father gave unopposed testimony that the Mother left with the child shortly after childbirth but subsequently returned and reconciled with the Father, with the final separation occurring around Thanksgiving in 2016. We thus agree with the Father that the retroactive child support award should be calculated beginning in late November 2016. *See Ditton v. Circelli*, 888 So. 2d 161, 162-63 (Fla. 5th DCA 2004) (holding that the retroactive award of child support to a time period when the parties were living together is reversible error). As for the calculation of the Father's ability to pay child support for the period when he was not living with mother and child, the same recalculations associated with prospective child support must be done here. The Mother should also be permitted to offer evidence establishing her income during the corrected timeframe because, as she correctly points out, she did not make $60,000 per year during the entire retroactive period.

**Conclusion**

On remand, the trial court is to hold an evidentiary hearing to establish the Father's earning potential in Charlotte, North Carolina for the prospective child support calculations. The net income, as opposed to gross income, is to be used. The trial court must also allocate the costs of transportation and supervision according to the parties' financial circumstances. Finally, both parties are to be permitted to offer evidence of their income for the corrected retrospective child support period.

*Affirmed in part, Reversed in part, and Remanded with instructions.*

CONNER and KUNTZ, JJ., concur.

\*      \*      \*

***Not final until disposition of timely filed motion for rehearing.***

5